**Donald E. EARLY, Plaintiff–Appellant,**

**v.**

**BANKERS LIFE AND CASUALTY COMPANY, Defendant–Appellee.**

No. 91–1842.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1991.

Decided March 25, 1992.

Alfred E. Aspengren, Aspengren & Associates, Chicago, Ill. (argued), for plaintiff-appellant.

Harry Sangerman, Kearney W. Kilens (argued), McDermott, Will & Emery, Chicago, Ill., for defendant-appellee.

Before POSNER, RIPPLE, and MANION, Circuit Judges.

POSNER, Circuit Judge.

Bankers Life and Casualty Company discharged Donald Early on October 31, 1988.

To sue Bankers Life under the Age Discrimination in Employment Act, Early had to file a "charge" with the EEOC within 300 days, 29 U.S.C. § 626(d)(2), and the suit itself within 2 years, § 626(e)(1). He made the 2–year deadline all right, but did he make the 300–day administrative deadline? The first complaint he filed in this suit states equivocally in its first paragraph that the plaintiff "has attempted to and believes that he has filed timely charges of discrimination" with the EEOC, while subsequent paragraphs explain that "on or about June 8, 1989, Plaintiff went to EEOC to file a charge of age discrimination under the Age Discrimination in Employment Act against Bankers," and that "on or about May 10, 1990, Plaintiff again went to EEOC to file a formal charge under the Age Discrimination in Employment Act having been informed that his earlier visit had not resulting [*sic*] in the filing of a formal charge." While June 8, 1989, was within 300 days of Early's discharge, May 10, 1990, was not—which may be why Early joined the EEOC as a defendant and alleged against it that "as a direct and proximate result of several negligent, erroneous and/or incomplete actions of Defendant EEOC, Plaintiff's filing of charges as against Defendant Bankers ... may or may not have been timely."

Bankers Life pounced, interpreting the complaint (which it moved under Fed. R.Civ.P. 12(b)(6) to dismiss) as admitting that Early's visit to the EEOC on June 8, 1989, had not resulted in the filing of a charge; hence he had missed the 300–day deadline; Early had been Late. In his reply to the motion to dismiss, Early explained that on his first visit to the EEOC, not yet represented by counsel, he had completed an Intake Questionnaire alleging age discrimination against Bankers Life, had given Bankers Life's address, and had consented to the disclosure of the allegation to Bankers Life. He had made the return visit to the EEOC, almost a year later, on the advice of his lawyer, whom he had retained in the interim and who had been rightly concerned about the absence of a formal charge. So far as appears, the

EEOC never notified Bankers Life of Early's allegations.

■ The district judge first decided *not* to convert the motion to dismiss to a motion for summary judgment, and in this he was right because none of the facts alleged in Early's reply was presented by affidavit or otherwise in evidentiary form, as required by Fed.R.Civ.P. 56(e). The judge interpreted the complaint, as had Bankers Life, as admitting that the visit to the EEOC on June 8, 1989, had not resulted in the filing of a charge. As for Early's argument (not evidence) concerning the Intake Questionnaire, the judge observed that "nowhere in the complaint does plaintiff mention the filing of the intake questionnaire or any facts to support his tolling arguments. The complaint, on its face, does not allege facts sufficient to support either the timely filing of a charge or tolling of the time to file." So the judge granted the motion to dismiss.

■ Early filed an amended complaint, properly dropping the EEOC as a defendant (the government has not waived its sovereign immunity to a damages suit against the EEOC, *McCartin v. Norton,* 674 F.2d 1317, 1322 (9th Cir.1982); *Golyar v. McCausland,* 738 F.Supp. 1090, 1096 (W.D.Mich.1990)), changing the wishy-washy first paragraph to a definite allegation that "Plaintiff has filed timely charges of discrimination," and amplifying the circumstances of the June 8 visit to the EEOC:

> [O]n or about June 8, 1989, Plaintiff filed a charge of age discrimination against the Defendant Bankers, which charges are more specifically detailed in a document entitled "Intake Interview", a copy of which is attached hereto.... As a ... result of several negligent, erroneous and/or incomplete actions of the EEOC, plaintiff's filing of charges ... were [*sic*] not executed, perfected and communicated to Defendant Bankers ... with dispatch, resulting in Bankers ... alleging that the charges were untimely filed. However, on June 8, 1989, plaintiff was assured by the EEOC that he had two years from the date of the al-

leged act of age discrimination to enter a suit against Defendant Bankers. Plaintiff asked for and received [on June 8] a copy of his Intake Interview to evidence and substantiate that he had taken the necessary steps to preserve his right to file suit.

No go. The judge refused leave to file the amended complaint, remarking that "assertions that a charge of discrimination was timely filed do not transmute the filing of an intake interview into a charge of discrimination. The well pleaded facts of the amended complaint fail to support a conclusion that a timely charge of discrimination was filed in this case."

If the original complaint had simply alleged that Early had filed a timely charge, we would have been spared this premature appeal. Bankers Life would have pleaded the statute of limitations and filed a motion for summary judgment supported by affidavits disclosing Early's successive visits to the EEOC, Early would have responded with affidavits of his own, and the judge would have either granted or denied the motion. If he denied it, the issue would be fully developed at trial (unless it became moot along the way); if he granted it, the appeal would come up to us with a full, or least a fuller, factual picture.

■ Early complicated life for everyone by alleging in his first complaint circumstances that suggested that his filing with the EEOC may not have been timely. He did this because he (or rather his attorney) was at the time laboring under the profound misconception that if the EEOC had caused his filing to be untimely he could obtain from it the damages that he would be barred from seeking from his employer. But Bankers Life jumped the gun by asking the district judge to *interpret* an ambiguous complaint, rather than, as it should have done, submitting evidentiary material to show that the filing had indeed been untimely. Even if we, at the risk of impertinence, disregard as hyperbole the famous statement in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), that a complaint can be dismissed for failure to state

a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," ambiguities in complaints in federal court should be interpreted in favor of plaintiffs, not defendants. *Leahy v. Board of Trustees*, 912 F.2d 917, 921 (7th Cir.1990). The district judge forgot this when he accepted the defendant's interpretation. He also forgot that while the allegations in Early's reply to the motion to dismiss were indeed not evidentiary, a plaintiff is free, in defending against a motion to dismiss, to allege without evidentiary support any facts he pleases that are consistent with the complaint, in order to show that there is a state of facts within the scope of the complaint that if proved (a matter for trial) would entitle him to judgment. *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 915 (7th Cir. 1985). He doesn't, as both Bankers Life and the district judge suggested, have to plead those facts. The federal rules, with the partial exception of Rule 9(b), do not require fact pleading. The plaintiff can plead a conclusion—that the charge of discrimination was timely—and then if the conclusion is questioned in a motion or a brief hypothesized facts that if proved would establish it. A defendant who wants to pin the plaintiff down has to present evidence, at which point Rule 56(e) comes into play and the plaintiff can't rest on his pleadings, let alone on hypothesized facts intended to show that his complaint can be construed as stating a claim.

■ Of course a plaintiff can plead himself out of court. *Id.* at 915; *Pearman v. Norfolk & Western Ry.*, 939 F.2d 521, 523 (7th Cir.1991); *Stewart v. RCA Corp.*, 790 F.2d 624, 632 (7th Cir.1986); *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 724 (7th Cir.1986). If he alleges facts that show he isn't entitled to a judgment, he's out of luck. Early came close to doing this in his original complaint, when he said that on June 8, 1989, he had gone to the EEOC to file a charge but that he had later been informed that he had not succeeded in filing one. The first paragraph of the complaint, however, had alleged that he believed he had filed a timely charge, imply-

ing that maybe he had been informed incorrectly that he had not; and a subsequent paragraph blamed any untimeliness on the EEOC, suggesting that Early might be arguing that his time for filing had been tolled. This was a mishmash, but Early's reply to the motion to dismiss clarified matters a bit, as our decision in *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 542–44 (7th Cir.1988), which treated an Intake Questionnaire as a charge, should also have done.

The EEOC's regulations explain that the "charge" which the statute requires be filed with it is simply a written statement by or on behalf of the aggrieved person that accuses the named prospective defendant of having violated one of the statutes administered by the Commission, such as the age discrimination law. 29 C.F.R. §§ 1626.3, 1626.8, 1626.8(b). The regulations distinguish between a "charge" and a "complaint," the latter defined as "information received from any source, that is not a charge, which alleges that a named prospective defendant has" violated one of the statutes. § 1626.3. The Commission notifies the named prospective defendant of a charge but not of a complaint. The practical difference is this. When a person thinks he is a victim of a violation of one of the statutes enforced by the EEOC, he writes or (as Early did) visits the nearest EEOC office. If it is a personal visit he will be handed an Intake Questionnaire to fill out. The questionnaire asks for the person's name and address, etc., and the name and address of the alleged discriminator, asks what action was taken against the complainer that he believes was discriminatory and with what consequence, asks what the nature of the discrimination was (race, sex, age, etc.), and asks whether the complainant consents to the disclosure of his identity to the alleged discriminator. A legend at the top of the form states that "an officer of the EEOC will talk with you after you complete this form." The officer reads the completed form to see whether it appears to allege conduct within the agency's purview and if it does asks the complainer whether he wants to file a charge.

If he does want to file a charge he fills out another form and a copy is sent to the employer. The completed Intake Questionnaire is the complaint. The other form, when filled out, is the charge.

That at least is how the process is supposed to work but at argument Early's lawyer told us that the person at the EEOC who interviewed Early on June 8, 1989, was a field investigator rather than someone regularly charged with handling Intake Questionnaires and that he had told Early that having filled out the questionnaire Early had done everything he had to do at the administrative level and had two years to file suit. Early naturally understood this to mean that he had filed a formal charge, and he learned otherwise only when he retained a lawyer to handle the suit.

The oral argument of the appeal from the dismissal of the complaint may seem awfully late to fill in the facts missing from that complaint. But we remind the reader of our previous point that when a complaint is dismissed at the pleadings stage the question is not what are the facts, but is there a set of facts that if proved would show that the case had merit? Moreover, if the first complaint, Early's reply to the motion to dismiss, and our opinion in *Steffen* were insufficient to rebut an inference of untimeliness suggested at places in that complaint, there was the amended complaint to be considered. It was not a masterpiece of the scrivener's art either, but it should have made reasonably clear that Early was trying to allege that the EEOC had misled him on that first visit. Neither Bankers Life nor the district judge suggested that the refusal to allow the amended complaint to be filed could be justified as an exercise of the judge's discretion to refuse leave to amend as a sanction for undue delay or bad faith or dilatory motive or because of undue prejudice to the defendant, or for any other reason unrelated to whether the amended complaint actually states a claim. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

We do not, of course, yet know what the facts are. But we are required to assume for purposes of determining whether the complaint should have been dismissed that the amended complaint is true and therefore that Early was told by the EEOC that the Intake Questionnaire which he filled out completed his responsibility at the administrative level. The question is, what are the legal implications of these facts if they are true? There are two possibilities. One is that Early in fact filed a formal charge, because the Intake Questionnaire that he filled out satisfied the requirements for such a charge, at least in the sense that it contained all the information that a charge would have contained—it made clear who was being charged by whom with what—and because both he and the Commission treated the filled-in questionnaire as the formal charge. This approach—call it "substantial compliance"—was taken in *Steffen* and is supported by similar cases in both this and other circuits, such as *Philbin v. General Electric Capital Auto Lease, Inc.*, 929 F.2d 321 (7th Cir.1991) (per curiam), and *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1241 (11th Cir.1989), and *a fortiori* by *Casavantes v. California State University*, 732 F.2d 1441 (9th Cir.1984), which seems to say that any completed Intake Questionnaire *is* a formal charge, period. *Id.* at 1442. We rejected *that* suggestion in *Perkins v. Silverstein*, 939 F.2d 463, 470 (7th Cir.1991), where unlike *Steffen* the Intake Questionnaire was incomplete in material respects and where the Commission made clear to the complainant that it was not treating the questionnaire as the charge, precisely because it didn't have enough information. To treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not of the questionnaire. The short statutes of limitations in employment cases have a purpose—both backpay obligations and the difficulty of reintegrating a terminated worker into the workforce grow with each day that passes before an employment dispute is resolved—and it is ill served when the employer does

 

not receive prompt notice of the dispute. *Delaware State College v. Ricks*, 449 U.S. 250, 256–57, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). When however the EEOC itself treats the Intake Questionnaire as the formal charge, it is hard to see what more to ask of the employee, and *Steffen* resolves the conflicting equities in his favor.

 Even if Early cannot fit himself within the rule of *Steffen*, Bankers Life is not off the hook. Misleading conduct by the EEOC can be a basis for tolling the administrative statute of limitations. Objection to such tolling cannot be based on the policy against estopping government agencies. That policy comes into play only when it is a suit against the agency, and this suit isn't, though Early tried to make it one. This is not an estoppel case at all, but a tolling case. The administrative statute of limitations started to run when Early was terminated, but the 300–day limit for filing a charge was tolled by the erroneous representations made him by the EEOC. For the distinction between equitable estoppel, which requires proof of misleading conduct *by the defendant,* and equitable tolling, which does not, see *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446 (7th Cir. 1990).

The practical difference between *Steffen* and equitable tolling lies in the duty placed on the plaintiff. If the Intake Questionnaire *was* the charge, it was timely filed and that's the end of it. If the misinformation that Early received when he visited the EEOC on June 8, 1989, merely tolled a statute of limitations that had already begun to run, then the question is whether he filed the (real) charge as early as he realistically could given that misinformation. *Cada v. Baxter Healthcare Corp., supra,* 920 F.2d at 453. That would require determining when he found out that he may not have filed a charge and how soon afterward he filed it.

Early is entitled to take both approaches—the first under *Steffen*, the second under general principles governing statutes of limitations. He preserved this entitlement through his filings, unartful as they unfortunately were, in the district court.