**Tracy L. CASS, Plaintiff,**

v.

**AMERICAN PROPERTIES, INC., d/b/a DiMucci Companies, Defendant.**

**No. 94 C 2977.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 4, 1994.

James T. Ryan, Ryan, Nelson & McSherry, Arlington Heights, IL, for defendant.

Lisa R. Kane, Chicago, IL, for plaintiff.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff Tracy L. Cass has sued her former employer, Defendant American Properties, Inc., d/b/a DiMucci Companies, alleging that she was terminated in retaliation for her opposition to Defendant's discriminatory conduct toward African–Americans seeking to rent apartments at Defendant's properties. Plaintiff alleges that Defendant's retaliatory discharge violates Title VII, 42 U.S.C. § 2000e–3(a). Pursuant to Fed.R.Civ.P. 12(b)(6), Defendant has moved to dismiss Cass' complaint on the ground that her claim does not fall under Title VII. For the reasons set forth below, the Court will grant the motion to dismiss but will allow Plaintiff to amend her complaint consistent with the views expressed within this decision.

### BACKGROUND

Plaintiff Cass began work for Defendant in September 1992 as a Leasing Director at Defendant's "Mansions" apartment complex in Mount Prospect, Illinois. According to the Complaint, Cass performed her duties well and received pay increases after two performance evaluations. In early May 1993, Defendant's president, Salvatore DiMucci, allegedly told Cass in the presence of other employees to "get the boos out of the pool." According to Cass, DiMucci was referring to several black children who were swimming in the pool with their parents. Cass refused to comply with this request and protested that it would be discriminatory. DiMucci then grabbed Cass, took her to the pool area and told her that he would "show [her] how to do it." Once there, DiMucci ordered the black children out of the pool, but did not order other non-black children to get out of the pool.

In addition to this incident, Cass alleges that DiMucci insisted on photos on all rental

applications and higher security deposits for black applicants. DiMucci threatened to reduce an agent's commissions if they rented to too many "boos," again referring to black Americans. Cass asserts that Defendant engaged in a pattern of discriminatory conduct toward black rental applicants and residents. Cass notes that Defendant was previously enjoined from violating fair housing laws at apartment complexes owned by Defendant by an Order of October 7, 1987 entered by Judge Hart of this District.

On July 5, 1993, Defendant's Service Manager, Eileen Trapanni, informed leasing agents that DiMucci did not want any agent to rent apartments to black Americans in newer and more desirable Phases Two and Four of the development. At that time, Cass stated that she refused to comply with this directive. On July 10, 1993, DiMucci fired Cass and told Cass that she was making too much money and the budget had been cut. According to Cass, that reason was a pretext because "any increase in salary for the Plaintiff would be the result of commissions earned for the rental and lease renewal of apartments, which resulted in greater income for the Defendant." Cass concludes that Defendant terminated her for her opposition to the "discriminatory rental practices of the Defendant" in violation of Title VII.

### DISCUSSION

As is always the case with motions to dismiss, the Court will assume the truth of the allegations of the Complaint. *Trevino v. Union Pacific R.R. Co.,* 916 F.2d 1230, 1234 (7th Cir.1990); *Gray v. Dane County,* 854 F.2d 179, 182 (7th Cir.1988). Ambiguities in the complaint are resolved in favor of plaintiff. *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir.1992). A court should not dismiss a complaint unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Ross v. Creighton University,* 957 F.2d 410, 413 (7th Cir. 1992); *Gorski v. Troy,* 929 F.2d 1183, 1186 (7th Cir.1991). Of course, it is also true that a plaintiff can plead herself out of court. *Early,* 959 F.2d at 79. If the plaintiff alleges facts that show she isn't entitled to judg-

ment, then she's out of luck. *Id.* On the other hand, to survive a motion to dismiss, plaintiffs need not identify a legal theory, nor is an incorrect legal theory fatal. *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1077 (7th Cir.1992). With these standards in mind, we now examine the Complaint and Defendant's motion to dismiss.

Title VII provides: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [she] has opposed any practice made an *unlawful employment practice* by this subchapter...." 42 U.S.C. § 2000e–3(a) (1988) (emphasis added). The critical issue in this case is whether Cass was opposing an unlawful employment practice because Title VII does not protect all forms of opposition to all forms of discrimination.

Defendant argues that Cass was protesting unlawful and discriminatory rental or housing practices which places her outside the scope of Title VII. Cass relies on the well-established principle that she must only have had a reasonable belief that she was challenging conduct in violation of Title VII. *Holland v. Jefferson National Life Ins. Co.,* 883 F.2d 1307, 1314 (7th Cir.1989). The challenged practice or conduct need not actually violate Title VII. *Id.* Thus, the question here becomes whether Cass could prove her opposition was founded on a reasonable belief that Defendant's conduct violated Title VII.

Defendant argues that even under the more liberal standard of "reasonable belief," Cass cannot prevail because courts have recognized that Title VII does not extend to all forms of opposition to all forms of discrimination. For example, in *Crowley v. Prince George's County,* 890 F.2d 683, 687 (4th Cir. 1989), the Fourth Circuit found that Title VII would not encompass a county employee's claim that he had been retaliated against for investigating instances of racial harassment perpetrated by police officers against members of the community. The court reasoned that Title VII is not a general "bad acts" statute and that it applies by its terms to discriminatory *employment* practices. *Id.* As the Court explained, "[w]hile Congress may decide to extend the statute's coverage to persons who bring any discriminatory

practice of an employer to light, such a step lies beyond the province of the courts." *Id.*

In *Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir.1978), the Ninth Circuit aptly summarized the principle focus of Title VII. "The specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable though that is, but the eradication of discrimination by employers against employees." *Id.* In *Silver,* the plaintiff lost sight of this thrust and asserted that she had been discharged in violation of Title VII for opposing the racial slur of a co-worker. The *Silver* court found that the co-worker's statement could not be attributed to the employer, nor did the plaintiff argue to the contrary. Under those circumstances, the Court held that it could not extend Title VII to cover a situation involving no unlawful employment practice by the employer, but only an isolated incident between co-workers. *Id.*

Cass attempts to distinguish these cases by focusing on the different factual settings. In *Crowley,* the employee was investigating racially discriminatory incidents and in *Silver,* the employee was opposing the racial slurs of a co-worker. Cass argues that here she opposed discriminatory conduct of her employer. Cass, however, focuses too narrowly on the specific facts of those case and also has lost sight of the thrust of Title VII and the broader proposition to be taken from *Crowley* and *Silver.*

■ Both those cases stand for the proposition that at a minimum the employee's opposition must in some way be directed at an unlawful *employment* practice of the employer. This Court would add that the employee's opposition *either* must be directed at an actual unlawful employment practice or must be directed at a practice that the employee reasonably believes is an unlawful *employment* practice. Furthermore, this Court has no authority to expand Title VII's protections beyond those recognized by Congress.

■ As Cass's Complaint states, she was terminated for her opposition to Defendant's discriminatory *rental* practices. As laudable as her opposition to such practices is, this Court concludes that Title VII does not provide a remedy for an employee discharged in retaliation for opposition to such practices. In other words, Cass could not have a reasonable belief that Defendant was violating Title VII where her own allegations indicate that no employment practice is involved.

■ At this point, the reader might assume that this Court could properly dismiss Cass' Complaint and be done with this matter. But, as we noted above, an incorrect legal theory is not fatal to a plaintiff, *Bartholet,* 953 F.2d at 1077, and for that reason this Court undertook a task that we must say properly should have been performed by plaintiff's counsel.[1] Congress has enacted a comprehensive body of law to prevent discrimination in housing and rental markets. Even the most minimal research discloses that Title VIII of the Civil Rights Act of 1968 (also known as the Fair Housing Act ("FHA")), 42 U.S.C. §§ 3601–3631, contains a provision directly applicable to Cass. Section 818 of the FHA provides:

> It shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or *on account of his having aided or encouraged any other person in the exercise or enjoyment of,* any right granted or protected by section 3603, 3604, 3605, or 3606 of this title. This section may be enforced by any appropriate civil action.

42 U.S.C. § 3617 (emphasis added).

Several decisions recognize that a discharged employee may have a cause of action under § 3617 as a person who has been coerced, intimidated, threatened or interfered with for aiding or encouraging others to exercise their rights under the FHA. *See, e.g., Wilkey v. Pyramid Constr. Co.,* 619 F.Supp. 1453, 1454–55 (D.Conn.1985) (collecting cases). In *Wilkey,* a white part-time rental secretary brought a claim under

1. While we are commenting on the performance of counsel, we should note that the central portion of Plaintiff's response brief contains a paragraph beginning on page 3 that continues without break through page 7. The Court would certainly appreciate the occasional use of proper paragraphs for the sake of clarity and ease of reading.

§ 3617 alleging that she opposed her employer's discriminatory policy denying black applicants an equal opportunity to view and rent apartments and was fired because of her opposition and refusal to adhere to her employer's policy. In denying the employer's motion to dismiss, the court found her allegations sufficiently stated that she aided and encouraged others in asserting their rights under the FHA and that reduction of her duties and eventual termination could constitute the coercion, intimidation and interference prohibited by § 3617.

Quite clearly, § 3617 is the proper statutory source for any claim Plaintiff Cass might have against Defendants. Because the Complaint does not currently rely on § 3617 and because the pleading of a violation of § 3617 is different than pleading a violation of Title VII, the Court will dismiss the current complaint and will allow Cass to file an Amended Complaint based on § 3617 within two weeks of this opinion.[2]

### CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion to dismiss but will allow Plaintiff to file an Amended Complaint within two weeks of the date of this opinion.

---

**2.** While Plaintiff's counsel should have discovered this statutory provision and bears most of the blame for that failure, the Court would also remind Defendant's counsel of his duty of candor to the Court. While Defense counsel may or may not have an affirmative duty to disclose the existence of the cases under § 3617, the Court believes it has a right to expect an acknowledgement of the impact of that statutory section which obviously effects the propriety of dismissal of Cass' claim.